**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JUDY LEVAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 C 212 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| STEELWORKERS PENSION TRUST and | ) | |
| MICHAEL C. FELICE, JR., | ) | |
| | ) | |
| Defendants. | ) | |

## Memorandum Opinion & Order

Plaintiff Judy Levar ("Mrs. Levar") brings this suit seeking to recover additional

benefits pursuant to Section 502 of the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1132 (2006).  The parties have filed cross motions for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the

reasons provided below, plaintiff's motion for summary judgment is denied and

defendant's motion is granted.

## I.  Background[1]

Defendant Steelworkers Pension Trust (the "Trust") is a benefit plan defined by

29 U.S.C. § 1002(2)(a) and sponsored by the United Steelworkers of America Local 17U

(the "Union").  Pursuant to a collective bargaining agreement (the "CBA") between the

Union and Indestructo Awning Company ("Indestructo"), Indestructo made contributions

---

[1] The Trust has submitted the minutes of the Appeals Committee meeting on July 18, 2006 and the
materials submitted to the Trust's Appeals Committee by Mrs. Levar in her appeal as Exhibit D to the
Trust's Rule 56.1 Statement of Facts (hereinafter referred to as "Trust Record D-__").  Due to the nature of
this case—where the parties have cross-moved for summary judgment and the issue is not whether there
are material facts in dispute that warrant a trial but rather what the legal effect of those facts are—the court
has taken as many of these facts from the Trust Record as possible.  The remaining facts are taken from the
parties' Rule 56.1 Statements of Facts and are undisputed unless otherwise noted.

to the Trust on behalf of its employees until 1996.  Def.'s Resp. Pl.'s Statement of Facts ¶ 35.  Gary Levar ("Mr. Levar") was employed by Indestructo until 2003, when he died at the age of 52.  Mrs. Levar is the surviving spouse of Mr. Levar and is entitled to receive a survivor benefit from the Trust based on Mr. Levar's pension.  At issue is the Trust's calculation of that benefit.

The Trust is governed by a Declaration of Trust called the "Plan" which provides the rules for calculating pension and death benefits.  Importantly, the amount of pension payable to an employee is based on time periods during which contributions were made by "Participating Employers" on behalf of that employee pursuant to a collective bargaining agreement.  The Plan dictates that the amount of pension payable to a Covered Employee is based on that employee's "credited service."[2]  Def.'s Statement of Facts Ex. A at 9.  "Credited service" includes either Past Service (which is not relevant in this case) or Covered Service.  *Id.*  "Covered Service" is defined as "[t]hose periods of employment with a Participating Employer after the date on which the [Pension Program] became effective with that employer and while the Participating Employer *continues to make contributions* to the Program."  *Id.* (emphasis added).

Normally, a Plan participant who retires after the age of 55 but prior to the age of 65 will have his pension reduced by 3% for every year of difference between the

---

[2] The Plan defines a "Participating Employer" as:

> Any corporation, association, partnership, individual or other legal entity employing persons represented by a Union for purposes of collective bargaining and having a collective bargaining contract with a Union in which such entity agrees to make contributions to the Trust.  This term shall also include the Sponsor and any of its subdivisions and, this Trust provided contributions are made on behalf of such employees as are selected by such employer to be covered by the Trust.

Pl.'s Statement of Facts Ex. 1 at 8.  The Plan also provides, in relevant part, that a "Covered Employee" is:

> Any employee of a Participating Employer employed in the bargaining unit represented by a Union and for whom the Employer is required to make a contribution by the Collective Bargaining Agreement between the Employer and the Union.

*Id.*

participant's age and 65 as a penalty for early retirement. However, the Plan contains a "Rule of 85" which provides an early retirement exception for certain long service employees. An employee may retire early (between the age of 55 and 65) without any reduction if:

(a) during the twenty-four (24) month period immediately preceding the month of retirement there were at least ten (10) months for which any Participating Employer paid any contribution to the Trust on behalf of the employee, and

(b) the employee's age by years and the number of years of covered service accumulated by the employee add up to eighty-five (85), counting as covered service only those calendar years, including the calendar year in which the retirement occurs, in which there were at least five (5) months for which any Participating Employer paid any contribution to the Trust on behalf of the employee.

Pl.'s Statement of Facts Ex. 1 at 76. Therefore, unless a Participating Employer has paid contributions on behalf of an employee for at least ten months in the two years prior to that employee's retirement, the employee cannot qualify for the Rule of 85.

## A. The CBA Between the Union and Indestructo

The CBA between Indestructo and the Union went into effect in 1990. Trust Record D-2 at 1. On November 7, 1996, Tommy Thomas ("Thomas") wrote a letter to the Trust stating that no contract had been in place between Indestructo and the Union since August of 1993. Trust Record D-5. Thomas was the President and Business Representative of the Union at the time. Based upon this letter and Thomas's prior oral representations regarding Indestructo,[3] the Trust inactivated Indestructo as a participating

---

[3] The record shows that the Trust was orally informed by Thomas that Indestructo no longer employed any Union employees sometime before September 19, 1996. Trust Record D-3. On October 21, 1996, Lisa Kapral, a benefits manager at the Trust, spoke to Thomas who confirmed that there was no CBA in effect between the Union and Indestructo and that there were no longer any Union employees at Indestructo. Kapral asked for written confirmation of this and Thomas responded with a letter on November 7, 1996.

employer under the Plan effective August 31, 1996.  Pl.'s Resp. Def.'s Statement of Facts ¶ 19.

On November 11, 1996, Thomas wrote a letter to Indestructo stating that there was no contract between the Union and Indestructo and there had not been one since August of 1993.  Trust Record D-6.  Thomas wrote that the Union wished to negotiate one but there is no evidence that Indestructo made any contributions to the Trust on behalf of any of its employees (including Mr. Levar) after August 31, 1996.

### B.  Mrs. Levar's Benefit

Mr. Levar died on November 26, 2003 at the age of 52.  Soon after Mr. Levar's death, the Trust sent letters to Mrs. Levar indicating that because Mr. Levar was a "terminated vested participant" at the time of his death, Mrs. Levar was eligible for coverage under the survivor's benefit provision of the Plan.  This meant that Mrs. Levar would be eligible for a surviving spouse's benefit (subject to the early retirement penalty) when Mr. Levar would have reached early retirement age (55) or, alternatively, for the full benefit when Mr. Levar would have turned 65 years old.  Trust Record D-17.  Mr. Levar would have turned 55 on January 9, 2006.  Despite the Trust's repeated request for various documents such as Mr. Levar's death certificate, the Levars' marriage certificate, and Mrs. Levar's Social Security number, Mrs. Levar did not provide the information requested by the Trust.  However, Mrs. Levar's brother-in-law, Dana Levar, called the Trust to inquire as to how much Mrs. Levar would receive.  *See* Trust Record D-15.

In response to Dana Levar's request, the Trust sent Mrs. Levar a letter on August 6, 2004, informing her that her monthly benefit (effective February 1, 2006) would be

$381.05, a calculation done without the benefit of the paperwork requested of Mrs. Levar by the Trust.  *See id.*

The Trust calculated Mrs. Levar's benefit under the Plan based on Indestructo's status as a "Participating Employer" only through August 31, 1996 (rather than 2003, which is when Mr. Levar stopped working at Indestructo).  Trust Record D-11.  Because Mr. Levar had not yet reached the age of 65, Mrs. Levar's benefit was subject to the early retirement penalty, which reduced the benefit by 30%.  Def.'s Resp. Pl.'s Statement of Material Facts ¶ 9.

Mrs. Levar contended her benefit was entitled to the Rule of 85, which would eliminate the early retirement penalty.  Through counsel and through her brother-in-law, Dana Levar, she repeatedly requested that the Trust adjust her benefit to reflect credit for Mr. Levar's work at Indestructo from the years 1996-2003.

The Trust sent letters to Mrs. Levar and her counsel stating that the Trust's records showed no contributions paid on Mr. Levar's behalf by any participating employer since February of 2001 and therefore his pension (and Mrs. Levar's benefit) could not qualify for the Rule of 85.  *See* Trust Record D-24 (letter to Dana Levar dated July 9, 2004).  Furthermore, because Indestructo had not made any contributions on Mr. Levar's behalf since 1996 (when Indestructo and the Trust were informed a CBA between the Union and Indestructo no longer existed), Mr. Levar's work at Indestructo after August 31, 1996 could not constitute "covered service." [4]  *Id.* D-11 (letter to Mrs.

---

[4] Mrs. Levar attempted to remedy the problem of the missing contributions through Dana Levar, who offered to have Indestructo (which is owned by Mr. Levar's father) make all the necessary contributions in one lump sum to the Trust retroactively in order to qualify Mrs. Levar for a benefit without the early retirement age reduction factor under the Trust Rule of 85.  *See* Pl.'s Mem. Supp. Summ. J. 4.  This offer was rejected both by the Union and the Trust.  Both the Union and the Trust contend that accepting this offer would constitute criminal activity.  The court expresses no opinion regarding the legality of this offer.

Levar's counsel dated February 7, 2006). The Trust invited the Levars to submit additional information relating to other participating employers if such employers existed; there is no evidence the Levars provided any such information.

## C. Mrs. Levar's Appeal

On February 7, 2006, the Trust denied Mrs. Levar's requests to recalculate her benefits and advised her of her right to appeal this denial. On May 12, 2006, Mrs. Levar appealed the benefits determination in a letter to the Trust. *See id.* D-1. Mrs. Levar asserted in her appeal that the CBA between the Union and Indestructo was never properly terminated, citing to Article XXXIII of the CBA, which provides in relevant part:

> THIS AGREEMENT . . . shall become effective as described above for a period up to and including Aug. 31, 1993, and shall continue to remain in full force and effect from year to year thereafter, unless written notice is given by either party hereto to the other on or before sixty (60) days prior to the expiration date, requesting that the Agreement to [sic] be modified or terminated. In the event of such notification the parties hereto shall immediately confer and negotiate with reference to a new or modified Agreement.

*Id.* D-1; Pl.'s Statement of Facts, Ex. 3 at 21.

Mrs. Levar argued in her appeal that no written notice was given by the Union to Indestructo within the time specified by the CBA. Although Mrs. Levar acknowledged the November 11, 1996 letter from the Union to the President of Indestructo notifying Indestructo that no CBA existed between them (indeed, Mrs. Levar herself submitted the letter to the Trust), she argued that letter was too late because the only time the Union could have submitted written notice was on or before sixty days prior to August 31. Trust Record D-1. Mrs. Levar contended that because the CBA was never properly terminated, it remained in effect until Mr. Levar's death in 2003; thus entitling her to

6

benefits calculated to include Mr. Levar's work from 2001-2003. Mrs. Levar blamed the Union for falsely stating that the CBA had been terminated and contended that the Trust should not have adopted Mr. Thomas's allegedly "illegal actions." *Id.* at 2. Accordingly, Mrs. Levar requested that credit be given for Mr. Levar's work during the period 2001-2003, which would increase the amount of her benefit. *Id.* at 5.

The Trust's Appeal Committee considered Mrs. Levar's appeal letter along with the documents she submitted with it. On July 18, 2006, the Trust denied her appeal. Def.'s Statement of Facts Ex. E. On August 24, 2006, the Trust advised Mrs. Levar in writing that she had exhausted her administrative remedies under the Plan.

On January 11, 2007, Mrs. Levar filed a two-count complaint in this court against the Trust and Michael C. Felice, Jr. alleging ERISA violations. On March 14, 2007, Mrs. Levar agreed to dismiss Count II (which asserted a claim for breach of fiduciary duty against the Trust and Felice) and dismissed Felice as a party. *See* Minute Order, March 14, 2007.

The Trust argues that it is entitled to summary judgment on the sole remaining count of Mrs. Levar's ERISA claim, which seeks to recover additional benefits under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) (2006). Mrs. Levar filed a cross motion for summary judgment seeking reversal of the Trust's decision and an order by the court directing the Trust to calculate her pension benefit based on the years 1996-2003, years that Mr. Levar worked at Indestructo but which were determined by the Trust not to be "covered service."

## II. Discussion

### A. Summary Judgment Legal Standard

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. In the consideration of a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the opposing party. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). Summary judgment is not appropriate if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Standard of Review Under ERISA

At issue is the Trust's decision regarding Mrs. Levar's pension benefits. "A court reviews a plan administrator's denial of benefits *de novo* unless the plan gives the administrator discretionary authority to determine eligibility for benefits." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989); *Herzberger v. Standard Ins. Co.,* 205 F.3d 327, 330 (7th Cir. 2000)). If the administrator of the

employee benefits plan at issue has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," a decision to deny benefits can only be overturned if it was arbitrary and capricious. *Firestone Tire & Rubber Co.*, 489 U.S. at 115; *see also Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004) ("If the plan confers discretionary authority, then a denial of benefits will be reviewed under an arbitrary and capricious standard."). In determining what the appropriate standard of review is, a court may consider the plan language as well as any other "plan documents" and looks to see whether the claimant is given adequate notice that the plan administrator's judgment will be "largely insulated from judicial review by reason of being discretionary." *Herzberger,* 205 F.3d at 332; *see also Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 817 (7th Cir. 2002); *Crespo v. Unum Life Ins. Co. of Am.*, 294 F. Supp. 2d 980, 990 n.3 (N.D. Ill. 2003).

The arbitrary and capricious standard of review is "the least demanding form of judicial review of administrative action." *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 812 (7th Cir. 2006) (quoting *Trombetta v. Cragin Fed. Bank for Sav. Employee Stock Ownership Plan,* 102 F.3d 1435, 1438 (7th Cir. 1996). Indeed, the court should not second-guess the administrator's decision; if the "decision has rational support in the record," the court must uphold it. *Davis v. Unum Life Ins. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006); *see also Johnson v. Allsteel, Inc.*, 259 F.3d 885, 890 (7th Cir. 2001) (the court must accept the administrator's reasonable interpretation of the record even if the claimant advances an equally reasonable interpretation). "Put simply, an administrator's decision will not be overturned unless it is downright unreasonable." *Davis,* 444 F.3d at 576 (citation and internal quotation marks omitted). In considering whether an

administrator's decision was reasonable, the court must consider only the materials "that were before the [administrator] when it reached its decision." *Trombetta,* 102 F.3d at 1437 n.1.

Here, the Plan reserves to the Trust the ability to "make a determination as to the right of any person to a benefit" and provides that this decision "shall be final and binding on all concerned." Def.'s Statement of Facts Ex. A §§ 6.02(a); 6.02(c). Further, the Plan provides that the Trust shall determine, *inter alia*, who shall be "Covered Employees." *Id.* § 6.11. Although the Plan does not use the words "discretionary authority," the Summary Plan Description uses equivalent language. *See Militello*, 360 F.3d at 685. It states that the Trust "has the full discretion to interpret the Declaration of Trust and other Plan Documents" and reiterates that the decisions of the Trust are final and binding on all concerned.[5] Pl.'s Statement of Facts Ex. 2 at 24. This language is sufficient to trigger the arbitrary and capricious standard of review. *See Semien*, 436 F.3d at 811 (Plan language provided for arbitrary and capricious review when Plan stated that all decisions made by the administrators would be "final and binding" and the administrators had "sole discretion and authority to apply, construe and interpret all Plan provisions, to grant or deny all claims for benefits and to determine all benefit eligibility issues."). When these documents are considered together, Mr. Levar was given adequate notice that the plan administrator's judgment will be "largely insulated from judicial review by reason of being discretionary." *Herzberger,* 205 F.3d at 332.

---

[5] The Summary Plan Description, which was submitted by Mrs. Levar in conjunction with her Statement of Facts, *see* Ex. 2, describes itself as a document meant to be read in conjunction with the Plan and intended to "summarize the provisions of the Declaration of Trust in understandable English [and] provide each Plan Participant with a brief but clear explanation of what benefits are available, how one qualifies for same and the Participant's rights and remedies under the law." Pl.'s Statement of Facts Ex. 2 at 1.

## C. Scope of the Trust's Decision Up For Review

The precise decision of the Trust that is at issue here requires clarification before proceeding any further. The Trust's briefs address its decision to deny Mrs. Levar the Rule of 85 exception to the rule that her benefit gets decreased for early retirement, which Mrs. Levar admits was the ground for her appeal to the Trust's Appeal Committee. *See* Pl.'s Mem. Supp. Mot. Summ. J. 4. Indeed, the majority of Mrs. Levar's correspondence to the Trust is focused on the Rule of 85 and Mrs. Levar's contention that application of the Rule would increase her benefit.

As discussed further below, the Trust has consistently maintained that because its records showed no contributions paid on Mr. Levar's behalf since 2001, Mr. Levar could not qualify for the Rule of 85. However, in its briefs, the Trust also argues that even if Mr. Levar were to be credited for the years 2001-2003, he still would not qualify for the Rule of 85. This is an argument that is not found anywhere in the record (and for the reasons provided below, is unnecessary). Accordingly, the court will not review that basis for the denial of Mrs. Levar's request. Mrs. Levar has responded to this argument in kind, newly contending that if those years are insufficient, Mr. Levar should also be credited for years of covered service in the 1970s. This argument is not found in Mrs. Levar's complaint, nor in her letter of appeal to the Trust. Accordingly, the court need not consider it. *See Auston v. Schubnell,* 116 F.3d 251, 255 (7th Cir. 1997) (on a motion for summary judgment, it "is too late in the day to be adding new claims"); *see also Komperda v. Hartford Life and Accident Ins. Co.*, No. 02 C 5359, 2003 WL 21148023, at *3 (N.D. Ill. May 14, 2003) (same).

Mrs. Levar also seeks to have Mr. Levar's work for Indestructo from 1996-2003 credited as "covered work." *See* Compl. ¶ 21 ("If all of Gary Levar's covered employment for the period of 1996 through 2003 had been credited as of his death at age 53, [sic] his survivor would be entitled to a greater pension benefit under the terms of the plan."); Pl.'s Mem. Supp. Mot. Summ. J. 5. The implicit argument is that if this work is credited, then the Rule of 85 will also apply. Pl.'s Mem. Supp. Mot. Summ. J. 3. The issue of "covered work" was appealed to the Appeals Committee and the administrative record reveals it was originally raised to the Trust in a letter from Mrs. Levar's counsel dated January 30, 2006. *See* Trust Record D-1; D-12. On February 7, 2006, the Trust denied Mrs. Levar's request to include Mr. Levar's work at Indestructo subsequent to August 31, 1996 as "covered work." *See* Trust Record D-11. The Appeals Committee made no findings in regard to this issue; it simply confirmed that the amount of benefit determined by the Trust was correct. *See* Def.'s Statement of Facts Ex. E. It could only have done so by agreeing with the Trust that Mr. Levar's employment between 1996 and 2003 was not "covered work." Thus, the court will review this issue as well.

The two issues for review before the court, then, are: (1) whether the Trust's decision that Mr. Levar's work at Indestructo subsequent to August 31, 1996 did not constitute "covered service" was arbitrary and capricious; and (2) whether the Trust's decision that Mr. Levar was not entitled to the Rule of 85 was arbitrary and capricious.

### D.  Mr. Levar's Work at Indestructo from August 31, 1996 through 2003

Mrs. Levar's argument that Mr. Levar's work at Indestructo from August 31, 1996 through 2003 should be credited as "covered work" is unpersuasive. The Trust justifies its denial on the bases that it was informed by the Union in 1996 that, as of

August 31, 1996, there was no longer a CBA between Indestructo and the Union and that no contributions were paid by Indestructo or received by the Trust after that date. The Trust's decision is supported by the record and the language of the Plan. "Covered service" is defined by the Plan as "[t]hose periods of employment with a Participating Employer after the date on which the [Pension Program] became effective with that employer and while the Participating Employer *continues to make contributions* to the Program." Pl.'s Statement of Facts Ex. 1 at 9. (emphasis added).

Mrs. Levar does not dispute that no contributions were made on Mr. Levar's behalf by Indestructo subsequent to August 31, 1996. She argues, however, that there was a CBA in effect between the Union and Indestructo that was never properly terminated by the Union, which required Indestructo to make contributions to the Trust on behalf of Mr. Levar. Mrs. Levar is implicitly arguing that it does not matter whether or not Indestructo made contributions to the Trust; as long as there was a valid CBA in place, Mrs. Levar's benefit should be adjusted to reflect Mr. Levar's work at Indestructo. Mrs. Levar has not pointed to anything in the Plan that supports this argument.

Further, Mrs. Levar's argument that the CBA was improperly terminated by the Union is unavailing against the Trust, which was not a party to the CBA. The Trust relied on the assertions of the Union that there was no CBA in place and the subsequent lack of contributions made on Mr. Levar's behalf in the relevant years.[6] To the extent that Mrs. Levar is arguing that the Trust should not have relied on the assertions of the

---

[6] Indeed, there is no evidence that the Trust interpreted the CBA or even considered whether it was properly terminated in making its decision regarding Mrs. Levar's benefit. Nor did it need to; the Trust relied on the Plan language, which provides that the amount of pension payable to an employee is based on time periods during which contributions were made by "Participating Employers" on behalf of that employee. Mrs. Levar's arguments concerning the CBA, which amount to legal arguments regarding whether or not it was properly terminated, do not address the basis upon which the Trust denied her benefits claim. Accordingly, the court cannot consider them.

Union, she has not pointed to anything in the record that would have put the Trust on notice that the CBA was improperly terminated; indeed according to the record, both Indestructo and the Union behaved as though the CBA was no longer in effect.

The upshot is that Mrs. Levar has provided no evidence that Indestructo made any contributions on behalf of Mr. Levar after August 31, 1996. Accordingly, the Trust's finding that Mr. Levar's work for Indestructo after August 31, 1996 could not constitute "covered service" is rational.

### E. The Rule of 85 Determination

The Trust maintains that because its "records show no contributions paid on [Mr. Levar's] behalf since 2001 . . . he cannot qualify for the Rule of 85." *See* Trust Record D-24. Applying the arbitrary and capricious standard to the facts recited above, the court cannot say that the Trust's decision to deny Mrs. Levar the Rule of 85 exception to her benefit was "downright unreasonable." *Davis*, 444 F.3d at 576 (citation and internal quotation marks omitted).

The court has found rational the Trust's determination that Mr. Levar's work between 1996 and 2003 for Indestructo was not "covered service." Therefore, the only contributions of relevance are those on record with the Trust. Mrs. Levar does not dispute that no contributions were made to the Trust on behalf of Mr. Levar by any participating employer after February of 2001. Pl.'s Resp. Def.'s Statement of Facts ¶ 21. The Rule clearly states that the exception can be granted only if "during the twenty-four (24) month period immediately preceding the month of retirement there were at least ten (10) months for which any Participating Employer *paid any contribution* to the Trust on behalf of the employee." Pl.'s Statement of Facts Ex. 1 at 76 (emphasis added). Mr.

Levar would have turned 55 on January 9, 2006 and he died on November 26, 2003: neither of these dates is within twenty-four months of the date of the last contribution made on Mr. Levar's behalf in February 2001. Therefore, the Trust's finding that Mrs. Levar's benefit was not entitled to the Rule of 85 is rational.

### F. Mrs. Levar's Procedural Arguments

Mrs. Levar also makes two arguments that appear to be attacking the process afforded her by the Trust in reviewing her claim. First, Mrs. Levar contends that the Trust failed to consider the CBA, legal authority regarding the termination clause of the CBA, or Mr. Levar's W-2 forms which demonstrate that Mr. Levar earned money while working for Indestructo from 1996-2003. To constitute a full and fair review under 29 U.S.C. § 1133(2), all the evidence that Mrs. Levar submitted should have been considered by the Trust. *See* 29 C.F.R. § 2560.503-1(h)(2)(iv) (stating that claims procedures must "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination").

The record before the court demonstrates a thorough consideration of the available information by the Trust. Mrs. Levar's argument is based on the premise that those documents necessarily resolve the instant benefits dispute in her favor, and therefore, the Trust must not have considered them because it was able to rule against her. However, as the Trust correctly points out, just because the Trust disagreed with Mrs. Levar's argument does not mean it failed to consider her evidence. *See Semien*, 436 F.3d at 812 ("Raising debatable points does not entitle [the claimant] to a reversal under

the arbitrary-and-capricious standard.") (quoting *Sisto v. Ameritech Sickness and Accident Disability Benefit Plan,* 429 F.3d 698, 701 (7th Cir. 2005)).  Further, the court's own review of the evidence reveals that it does not provide the relief Mrs. Levar seeks from the Trust as none of it demonstrates that Indestructo made any contributions for Mr. Levar after August 31, 1996, or that any participating employer made contributions on behalf of Mr. Levar after 2001.

Second, Mrs. Levar contends that she did not receive the requisite notice regarding the denial of her claim.  ERISA requires that specific reasons for denial be communicated to the claimant.  *See* 29 U.S.C. § 1133(1) ("[E]very employee benefit plan shall:  (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim. . . .").  The Seventh Circuit has held that this does not require the Trust to explain why those reasons are good reasons.  *Militello*, 360 F.3d at 688 (noting that although a letter from the Trustees was "sparse," it satisfied statutory and regulatory requirements because "the Trustees were required to give only specific reasons, not the reasoning behind the reasons.").

There are two letters in the record that provide specific reasons for the denial of Mrs. Levar's request for increased benefits.  On July 9, 2004, the Trust sent Dana Levar a letter notifying him that because its records showed that no contributions were paid on

Mr. Levar's behalf since 2001, Mrs. Levar's benefit could not qualify for the Rule of 85.[7]

*See* Trust Record D-24. This letter offered Dana Levar the opportunity to submit

additional information that might demonstrate that Mr. Levar worked for participating

employers during that time. On February 7, 2006, the Trust sent a letter to Mrs. Levar's

counsel stating that Mrs. Levar's request to credit Mr. Levar's work for Indestructo

between August 31, 1996 and 2003 as covered work was denied because the Trust was

informed that there was no CBA in place between the Union and Indestructo and because

Indestructo had not made contributions after August 31, 1996. *Id.* D-11. In that letter,

the Trust informed counsel that Mrs. Levar could appeal the decision. These two letters

provide, "in a manner calculated to be understood by the participant," that the Trust

denied Mrs. Levar's request to have her benefit increased because no employer had made

any contributions for Mr. Levar between 2001 and 2003 (which precluded him from the

Rule of 85) and because Indestructo had made no contributions for Mr. Levar (or any

employee) pursuant to an existing CBA after August 31, 1996. *See* 29 U.S.C. § 1133(1).

The letters also provided an opportunity for review.

Mrs. Levar does not address the letters about the Trust's decision; instead, she

focuses on the communications about the denial of her appeal. The Appeals Committee

made no findings; it simply issued a bald denial as part of its minutes. *See* Pl.'s

Statement of Facts Ex. 4 ("Upon motion, duly made and seconded, it was unanimously

Resolved, that the following individual appeals be denied. . . . Judy Levar, Survivor. . .

."). After the appeal decision, the Trust wrote a letter to Mrs. Levar which stated:

> The [Appeals] Committee agreed with our previous decision that Judy
> Levar is only entitled to a monthly survivor benefit in the amount of

---

[7] Though the letter states that the author of the letter, Richard Hoffman, had "come to the same conclusion as [he] did in the past," the record does not contain another letter or notice that provides this content.

$381.05 effective February 1, 2006, which is the first month following the month in which Gary Levar, her deceased husband, would have reached age 55 years, the earliest retirement age under the Steelworkers Pension Trust.

Def.'s Statement of Facts Ex. E. The letter also stated that Mrs. Levar had not submitted an application for this benefit despite numerous requests by the Trust for her to do so. *Id.* Though the decision of the Appeals Committee is sparse, to say the least, the past notices to Mrs. Levar, as stated above, provided ample notice for Mrs. Levar to challenge the Trust's decision. Mrs. Levar has not pointed to any authority that limits the court's review to the language of the Appeals Committee. Accordingly, this argument fails as well.

### G. The Trust's Request for Attorney's Fees

Although the issue of whether fee-shifting is appropriate is not an issue suitable for determination under summary judgment standards, the Trust raised it in their cross-motion and – because the Trust prevailed on its arguments – the court will now address it. The court declines to award fees and costs in this case finding that, although ERISA allows a court to award reasonable fees and costs to a prevailing party, it would be unjust in this case.

The civil enforcement provisions of ERISA provide that "[i]n any action under this subchapter . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).[8] ERISA provides for a "modest presumption in favor of awarding fees to the prevailing party," although that presumption may be rebutted. *Senese v. Chicago Area Int'l Bd. of Teamsters Pension Fund*, 237 F.3d 819, 826 (7th Cir. 2001) (citing *Harris Trust & Sav. Bank v. Provident Life & Accident*

---

[8] The court notes that neither party correctly cited this statutory provision in its briefs; both referred the court to 29 U.S.C. § 1332, which does not exist.

*Ins. Co.*, 57 F.3d 608, 617 (7th Cir. 1995)).   Specifically, a court may deny an award of fees to a successful defendant "if the plaintiff's position was both 'substantially justified' – meaning something more than non-frivolous, but something less than meritorious – and taken in good faith, or if special circumstances make an award unjust."  *Id.* (citing *Harris Trust & Sav. Bank*, 57 F.3d at 616-17 & n.4).

Most published opinions deal only with the "substantial justification" test and provide little guidance on what constitutes "special circumstances."[9]  Nevertheless, "[s]ome . . . factors . . . may in particular cases constitute exceptional circumstances that would make a fee award against a plaintiff unjust even though [s]he did not have a solid basis for [her] suit."  *See Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984).  A plaintiff's good faith in bringing suit, even without substantial justification, coupled with an inability to pay an award without great hardship may make it unjust to award a fee to the defendant.  *Id.*  at 830.

The Trust focuses its arguments on the merits of Mrs. Levar's arguments to justify its claim for fees.  However, whether the claims were "substantially justified" is not dispositive because, on balance, an award of fees in this case would be unjust.  The court finds that Mrs. Levar brought the case in good faith and it would be unreasonable to shift the burden of fees to her.  Essentially, Mrs. Levar was fighting to get the benefits to

---

[9] This circuit also endorses the use of a five-factor balancing test to evaluate the appropriateness of an award of fees under ERISA.  *Senese*, 237 F.3d at 826 n.4 (citing *Brewer v. Protexall, Inc.*, 50 F.3d 453, 458 (7th Cir. 1995).  Under this test, the court looks at:
> (1) the degree of the offending party's culpability or bad faith; (2) the offending party's ability to satisfy an award of fees; (3) whether the award of fees would deter other persons under similar circumstances; (4) the amount of benefit conferred on members of the plan as a whole; and (5) the relative merits of the parties' positions.

*Id.* (citing *Harris Trust & Sav. Bank*, 57 F.3d at 617 n.5).  However, it appears that the five-factor test bears no relationship to a consideration of "special circumstances," only to "substantial justification."   *See, e.g.*, *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998) (concluding that "[b]oth tests . . . ask the same question: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent").

which she believed she was entitled as a result of her husband's lifetime of work. After her husband, Gary, died in 2003, the Trust told Mrs. Levar that her survivor benefits would be $381.05 a month. *See* Trust Record D-15. His financial records showed that he earned an average of $43,000 a year over the last three years of his life, Trust Record D-8, yet none of this was applied toward his pension credits. Mrs. Levar disagreed with the Trust's determination of the amount and effective date of her survivor benefits. She argued that the Trust should have considered her husband's work through the time of his death because the termination of the CBA (which formed the basis of the Trust's termination of the Plan) was invalid. The record shows some contradiction surrounding the exact date at which various agreements terminated[10] and, even if Mrs. Levar's claim is not substantially justified (an issue about which the court expresses no opinion), the court believes that Mrs. Levar filed the case in good faith.

The record contains no information on Mrs. Levar's financial ability to pay attorneys' fees. The sole information available is that she is entitled to $381.05 a month in survivor benefits. Trust Record D-15. The court notes that Mrs. Levar's monthly benefits would pay for about one hour of an associate attorney's time. If it awards fees in this case, the court would effectively strip Mrs. Levar of the very benefits at issue in this case for years to come. Because such an action would be unjust, it declines to award attorneys' fees and costs to the Trust.

---

[10] For example, the Union says the CBA terminated in 1993. Trust Record D-5. The Trust did not contact Indestructo to verify this. Def.'s Response to P.'s Statement of Facts ¶ 20. Gary Levar tried to continue to make payments to the Union after 1993. *See* Trust Record D-22 ¶ 2 (letter from counsel for the Union stating that "the Local refused to accept union dues or insurance payments from Gary Levar"); *id.* at D-25 ¶ 3 (letter from Dana Levar stating that and that union dues were returned to Gary Levar).

### III. CONCLUSION

Mrs. Levar has provided no evidence the Trust's decision regarding her benefit was arbitrary or capricious. Therefore, the court is compelled to uphold the Trust's decision. The Trust's motion for summary judgment on Mrs. Levar's claim is granted and Mrs. Levar's motion for summary judgment is denied. The Trust's request for attorneys' fees and costs is denied.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 28, 2008